UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| ARTHUR FLEMMING MOLER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 19-cv-00206-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CHRISTOPHER STOVALL, *et. al*., | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Arthur Moler is a former federal inmate who now resides in Sterrett, Alabama.
Moler has filed an amended *pro se* Complaint asserting civil rights claims pursuant to the
doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971),
the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 ("FTCA"), and an assortment of
federal and state statutes and regulations. [R. 12.] The Court has granted Moler's motion to
proceed *in forma pauperis* by prior Order. [R. 6.]

This matter is before the Court to conduct a preliminary review of Moler's Amended
Complaint because he has been granted *pauper* status and because, while a prisoner, he asserted
claims against government officials. 28 U.S.C. §§ 1915(e)(2), 1915A. A district court must
dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be
granted, or seeks monetary relief from a defendant who is immune from such relief. *Hill v.
Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court evaluates Moler's complaint under a
more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S.
89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court

accepts the plaintiff's factual allegations as true, and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

The principles requiring generous construction of *pro se* pleadings are not without limits. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *Wilson v. Lexington Fayette Urban County Government*, 2007 WL 1136743 (E.D. Ky. April 16, 2007). A complaint must set forth claims in a clear and concise manner, and must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hill*, 630 F.3d at 470. *See also* Fed. R. Civ. P. 8. In addition, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. The Court therefore need not create arguments or claims that the plaintiff has not made. *Coleman v. Shoney's, Inc.*, 79 F. App'x 155, 157 (6th Cir. 2003). A vague allegation that one or more of the defendants acted wrongfully or violated the plaintiff's constitutional rights is insufficient. *Laster v. Pramstaller*, 2008 WL 1901250, at *2 (E.D. Mich. April 25, 2008) ("Neither the Court nor Defendants are obligated to search through the Complaint and its voluminous exhibits in order to glean a clear and succinct statement of each claim for relief. It is Plaintiffs' responsibility to edit and organize their claims and supporting allegations into a manageable format."). The Court is not required to create legal claims for the plaintiff or "conjure up unpled allegations." *Moorman v. Herrington*, , 2009 WL 2020669, at *1 (W.D. Ky. July 9, 2009) (citations omitted).

# I

In December 2014 a jury in Columbia, South Carolina found Moler guilty on three federal charges related to his importation of counterfeit goods into the United States. Three months later Moler's bond was revoked, and on February 6, 2015 he was taken into custody and

placed in the Lexington County Detention Center.  He remained there until his sentencing

hearing on June 2015, after which he began service of his federal sentence.  *United States v.*

*Moler*, No. 3: 14-CR-393-JFA-1 (D.S.C. 2014) (R. 2, 73, 99, 122 therein).  Moler was

transferred to the United States Penitentiary – McCreary in late July 2015.  [R. 12 at 6.]

### A

The Court first discusses Moler's "Claim Two" because the events giving rise to it

transpired earliest in time.  Moler alleges that in April 2015 a psychologist at the county jail in

South Carolina had diagnosed him with anxiety and depression, and that he was prescribed

Remeron HS (a form of mirtazapine, an antidepressant) at that time.  *Id.*  He states that upon his

arrival at McCreary three months later, he met with psychologist Alyssa Handle, but she did not

discuss his diagnosis during his intake interview or change his medications.  *Id.*  However,

physician assistant ("PA") West later told him that his prescription for Remeron had been

changed to Amitriptyline (a tricyclic antidepressant).  *Id.*

After Moler experienced "coping issues" in March 2017, chief psychologist Doug Lemon

diagnosed Moler with anxiety and depression.  *Id.*  Moler complains that because of his mental

health conditions, BOP psychologists should have been conducting "monthly interventions" with

him all along.  *Id.*  After Moler complained to this effect in January 2018, he was evaluated by

chief psychologist Ms. Parsons-Gould, who concluded that he was "still at MH2," and scheduled

monthly interventions with him.[1]  Moler alleges that psychologist Rachel Johnson was then

assigned as his psychologist, but that she never met with him even after he advised her of the

---

[1]     Moler does not explain what "MH2" refers to, but in documents attached to his original
complaint he indicates that he was a "mental health level two" patient.  *See* [R. 1-1 at 19.] This
refers to an inmate who should if possible be housed at a BOP facility that can provide "level two"
psychological care.  *See* Federal Bureau of Prisons Clinical Guidance, *Care Level Classification
for Medical and Mental Health Conditions or Disabilities* (May 2019).

need to do so.  *Id.* at 6-7.  Moler complains that when he was placed in segregation in February 2018, he was not seen by psychological services staff and that Ms. Parsons-Gould did not file a report when he told her that he had recently been sexually harassed and threatened by prison guards.  *Id.* at 7.  As a result of the asserted failure to provide Moler with adequate mental health care, he alleges that he suffered anxiety, stress, and had a panic attack.  *Id.* at 6-7.  Moler was transferred to another federal prison on March 9, 2018.  [R. 12-1 at 6.]

In Claim Two, Moler alleges that defendants Handle, Lemon, Parsons-Gould, and Johnson failed to provide adequate mental health care and exhibited deliberate indifference to his serious mental health needs in this regard.  [R. 12 at 6, 8.]  Moler contends that the defendants violated his rights under the Fifth and Eighth Amendments to the United States Constitution.  *Id.* at 10.  He also asserts violation of 5 U.S.C. § 500 *et seq.*, which he describes as the "APA"; 18 U.S.C. § 1326, a statute that does not exist; 18 U.S.C. § 4042(a)(2) and (a)(3), which broadly directs the Bureau of Prisons ("BOP") to provide inmates with "suitable quarters," "care," "protection," and "instruction"; and 18 U.S.C. § 4081, which broadly directs the BOP to design prisons in a manner consistent with the needs of the prison population.  *Id.*  Moler concludes with a laundry list of asserted violations of various Kentucky statutes, regulations, and internal policy documents.  These include Ky. Rev. Stat. 314.091(1)(d) & (1)(h), which gives the Kentucky Board of Nursing the authority to impose sanctions for misconduct; Ky. Rev. Stat. 216B.165(1), which directs employees of health care facilities licensed by Kentucky law to report serious concerns about quality of care to their superiors; Ky. Rev. Stat. 197.020(1)(b), which directs the Kentucky Department of Corrections ("KDOC") to promulgate administrative regulations regarding the care and feeding of inmates; KAR 6:020, which incorporates by

4

reference KDOC's Policies and Procedures ("CPP"); and CPP 13.2, a KDOC policy which generically describes the provision of health care to inmates in KDOC prisons.  [R. 12 at 10.]

The Court must dismiss Moler's constitutional claims under *Bivens* for several reasons. First, Moler's claims regarding his medical care are governed by the Eighth Amendment's prohibition against cruel and unusual punishments, not the Fifth Amendment's due process clause.  *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."); *Cooleen v. Lamanna*, 248 F. App'x 357, 362 (3rd Cir. 2007) (viability of claim under Eighth Amendment to challenge medical care of prisoner forecloses availability of substantive due process claim).  Even where the Fifth Amendment does apply, such as to pretrial detainees, "the Due Process Clause affords ... no greater protection than does the Cruel and Unusual Punishments Clause."  *Whitley v. Albers*, 475 U.S. 312, 327 (1986).

Moler's allegations fail to state a viable claim under the Eighth Amendment:  "[i]n order to state a cognizable claim [under the Eighth Amendment] a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A plaintiff must allege sufficient facts to establish both the objective component – that the plaintiff had a serious medical need – and the subjective component – that the defendant actually knew that the plaintiff was at substantial risk of harm and then consciously disregarded that risk.  *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).  While Moler's allegations indicate his disagreement with the sufficiency of the care provided, he does not allege facts indicating that the defendants acted with a knowing and culpable disregard for his well-being by intentionally denying or delaying

medical care.  His Complaint therefore fails to adequately state an Eighth Amendment claim.
*Estelle*, 429 U.S. at 104; *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

Moler's constitutional claims are also barred by the statute of limitations.  The Court may
dismiss a claim self-evidently barred by the applicable limitations period upon initial
screening.  *Jones*, 549 U.S. at 215 ("If the allegations, for example, show that relief is barred by
the applicable statute of limitations, the complaint is subject to dismissal for failure to state a
claim."); *Franklin v. Fisher*, 2017 WL 4404624, at *2 (6th Cir. 2017) ("The district court
properly dismissed Franklin's complaint for failure to state a claim upon which relief may be
granted because it is obvious from the face of her complaint that almost all of her claims are
barred by the applicable statute of limitations."); *Castillo v. Grogan*, 52 F. App'x 750, 751 (6th
Cir. 2002) ("When a meritorious affirmative defense based upon the applicable statute of
limitations is obvious from the face of the complaint, *sua sponte* dismissal of the complaint as
frivolous is appropriate.").

Because the remedy afforded in a *Bivens* action is entirely judge-made, there is no
statutory limitations period.  Instead, federal courts apply the most analogous statute of
limitations from the state where the events occurred.  *Wilson v. Garcia*, 471 U.S. 261, 268-71
(1985).  The events about which Moler complains occurred in Kentucky; therefore, Kentucky's
one-year statute of limitations for asserting personal injuries applies.  Ky. Rev. Stat.
§ 413.140(1)(a); *Hornback v. Lexington-Fayette Urban Co. Gov't.*, 543 F. App'x 499, 501 (6th
Cir. 2013); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003) ("*Bivens* claims have a one-
year statute of limitations under Kentucky law.").

A claim accrues when the plaintiff becomes aware of the injury which forms the basis for
his claims.  *Estate of Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 389, 393-94 (6th Cir.

2015) ("Once the plaintiff knows he has been hurt and who has inflicted the injury, the claim

accrues.") (internal quotation marks omitted) (citing *United States v. Kubrick*, 444 U.S. 111, 122

(1979)).  Where the operative facts are not in dispute, the Court determines as a matter of law

whether the statute of limitations has expired.  *Highland Park Ass'n of Businesses & Enterprises

v. Abramson*, 91 F.3d 143 (Table) (6th Cir. 1996) (citing *Hall v. Musgrave,* 517 F.2d 1163, 1164

(6th Cir. 1975)).  *See also Fox v. DeSoto*, 489 F.3d 227, 232 (6th Cir. 2007).  Moler's claims

accrued as early as July 2015 upon his initial intake meeting when he arrived at McCreary, and

certainly no later than February 2018 when he voiced his complaints about the care he was

receiving in the segregation unit.  Because he did not file suit regarding these matters until

August 22, 2019, eighteen months after the latest of these dates, his claims are time barred.

Of course, the running of the limitations period may be equitably tolled during the period

when an inmate is, as required by federal law, exhausting his administrative remedies, so long as

the inmate pursues such remedies diligently and in good faith.  *Brown v. Morgan*, 209 F.3d 595,

596 (6th Cir. 2000).  But documents attached to Moler's original complaint establish that he is

not entitled to such equitable tolling because he failed to properly exhaust his administrative

remedies at all, let alone diligently and in good faith.  In May 2018 Moler filed an inmate

grievance regarding his treatment while he was in segregation in February 2018; this grievance

notably does not involve any of the other conduct about which Moler complains in Claim Two.

This grievance was filed well beyond the twenty days permitted by BOP policy, see 28 C.F.R.

§ 542.14, and hence was promptly rejected by the BOP as untimely.  [R. 1-1 at 18-21.]  Moler

waited two months before contesting that rejection – again well beyond the time period permitted

– by filing a grievance with the warden in July 2018.  That grievance was rejected at the

institutional level as both untimely and on other procedural grounds, but Moler was afforded the

opportunity to correct and/or explain any deficiencies.  Instead of doing so, Moler simply appealed to the next level, something BOP regulations do not permit.  *See* 28 C.F.R. § 542.17.  Moler repeated this approach at both the regional and national levels of appeal.  [R. 1-1 at 22-27.]

The foregoing establishes that Moler failed to properly exhaust his administrative remedies with respect to any part of his Claim Two.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ...").  The fact that Moler was released from custody (several years after the conduct he complains of) does not relieve him of the obligation to have exhausted his administrative remedies while he was still in prison.  *Cox v. Mayer*, 332 F. 3d 422 (6th Cir. 2003).  It further establishes that Moler's efforts at exhaustion were not undertaken both diligently and in good faith.  Equitable tolling is therefore not warranted, rendering his claims untimely.  *Jackson v. United States*, 751 F. 3d 712, 718-19 (6th Cir. 2014); *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010).

Moler's other claims fare no better.  The Administrative Procedures Act provides no basis for a claim regarding the sufficiency of his medical care because the APA does not permit judicial review of an action "committed to agency discretion by law."  5 U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821, 829-33 (1985).  While Moler references myriad other state and federal statutes, he makes no effort to state a claim under any of them, and the Court is not obligated to conjure one for him.  *Coleman*, 79 F. App'x at 157.  In any event, the referenced statutes contain no prescriptive language at all, leaving no rule stated that a defendant could violate.  Predictably, none of the statutes expressly confer a private right of action for their asserted violation, nor is there any basis to infer one.  *Cf. Mich. Corr. Org. v. Mich. Dep't of*

8

*Corr.*, 774 F. 3d 895, 903 (6th Cir. 2014) ("If a statute fails to provide a private remedy, the federal courts may not create what Congress did not.").

In any event, regardless of the statute or regulation Moler purports to rely upon for his claim, Claim Two must be dismissed because nowhere does he allege that he suffered any physical injury from the conduct complained of. Federal law bars damage claims asserted by prisoners for purely emotional harm. 28 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury."). Claims for purely emotional harm like those asserted here are precisely the kind that Section 1997e(e) was designed to foreclose. Cf. *Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003). Of course, Moler is a free man now, but he was incarcerated when he "brought" this civil action when filed his original complaint and hence he is subject to this restriction. *Cf. Harris v. Garner*, 216 F. 3d 970 (11th Cir. 2000); *Abdul-Wadood v. Nathan*, 91 F.3d 1023 (7th Cir. 1996). For each of the reasons set forth above, Claim Two will be dismissed with prejudice.

**B**

In his "Claim One," Moler alleges that shortly before he was placed in segregation in February 2018, BOP pharmacist Christopher Stovall told doctor Carrie Cunnigan that Moler's drowsiness was caused by his prescription for Amitriptyline. Moler states that Stovall directed doctor Cunnigan and physician assistant Pamela Kenney to instead prescribe Sertraline (a selective serotonin reuptake inhibitor, another category of antidepressant). Moler alleges that when he was given his bottle of Sertraline pills he was not also given a patient information sheet which included information regarding possible side effects. [R. 12 at 4.]

Moler states that in mid-February when he was housed in the segregation unit, he suffered from what he thought was a bladder infection and experienced symptoms consistent with erectile dysfunction. *Id.* Moler told nurse J. Free about his concerns, and she told him to put in a "sick call" request the following day. Moler states that he promptly filed a sick call request but that the response, authored by either Health Services Administrator ("HSA") Rhonda Jones or Assistant HSA Tara Cimarossa, stated that his concerns did not indicate an emergency and that he should request a regular appointment to see a doctor in the medical department. Moler states that he requested an appointment with a doctor through either nurse Sumner or nurse Free. *Id.* Moler further alleges that he told BOP Executive Assistant Christopher Mabe that he needed prompt medical attention, but that Mabe did nothing to assist him. *Id.* Moler finally alleges that physician assistant Jennifer West told him that the change in his prescription medications was not necessary, but that she did nothing to contest or countermand the orders of pharmacist Stovall or doctor Cunnigan. *Id.* at 4-5.

In May 2018, three months after the events complained of and following his transfer to another prison, Moler filed an informal inmate grievance complaining that Stovall "fail[ed] to follow federal law in providing patient info sheets ..." *Id.* Two months later in July 2018 he filed a formal grievance with the warden, but it did not explain the facts of his grievance; instead it merely referred to his informal grievance regarding this issue. [R. 1-1 at 3, 4.] That grievance was promptly rejected on procedural grounds, namely Moler's failure to explain on the grievance form what his grievance was actually about. *Id.* at 5. As before, Moler did not attempt to correct the deficiencies and resubmit the grievance, choosing instead to simply appeal. And as before, Moler's appeals were rejected on procedural grounds at both the regional and national levels. *Id.* at 6-9. Notably, Moler's grievance referred only to Stovall and mentioned only the failure to

10

provide information sheets regarding new prescriptions; none of the other factual allegations set forth in "Claim One" of Moler's Complaint are mentioned.

In December 2018, Moler filed a Standard Form 95 *Claim for Damage, Injury, or Death* with the BOP's Mid-Atlantic Regional Office seeking administrative settlement of his claims arising (at least generally) from the facts described in Claim One.  [R. 12-1 at 1-4.]  The BOP denied that claim by letter dated June 13, 2019.  *Id*. at 5-6.

Moler's Claim One fails for many of the same reasons stated above with respect to Claim Two.  Moler's allegations do not state a viable claim under the Fifth or Eighth Amendments. The mere failure to provide a printed information sheet about a new medication does not, without more, evidence a prescribing physician's knowing and conscious disregard of a serious risk of harm to the patient.  *Cf. Brown v. UConn Managed Health Care*, 2015 WL 4509432, at *2-3 (D. Conn. July 24, 2015) (collecting cases); *Burgess v. Mar*, 395 F. App'x 368, 368 (9th Cir. 2010) ("failure to warn [plaintiff] of the potential side effects of pain medication constitute[s] negligence at most, and not deliberate indifference").  As a factual matter, in rejecting Moler's request for administrative settlement the BOP noted that when Moler's prescription was changed he signed a consent form that disclosed the medication's side effects, which included decreased sex drive.  [R. 12-1 at 5-6.]  Moler does not suggest otherwise in his Complaint.  And Moler had only brief interactions with each of the other health care providers he names as defendants, who told him to request a medical appointment to address his concerns, and Moler does not allege that he suffered any harm as a result of any brief delay before he was seen by a physician.  He therefore manifestly fails to state a deliberate indifference claim under the Eighth Amendment against them.

11

Moler also failed to properly exhaust this claim.  As noted above, the inmate grievance Moler filed with the warden in July 2018 was untimely by four months.  *See* 28 C.F.R. § 542.14(a) (requiring initial grievance to be filed within 20 days of events complained of, regardless of whether attempts at informal resolution have concluded).  The grievance also failed to clearly set forth the basis for his dissatisfaction.  [*See* R. 1-1 at 4.]  Even his initial attempt at informal resolution mentioned only Stovall and the failure to provide a patient information sheet, not any of the other events he now complains of.  *Id*. at 3.  The BOP acted properly in rejecting Moler's grievance, and he repeatedly refused its invitation to resubmit his grievance in proper form, instead prematurely appealing.  *Id*. at 5-9.  He therefore failed to properly exhaust his administrative remedies.  *Woodford*, 548 U.S. at 90.

This would require, at a minimum, dismissal of this claim without prejudice.  *Cf. Adams v. Smith*, 166 F. App'x 201 (6th Cir. 2006).  But Moler's refusal to make a good faith effort to exhaust his administrative remedies also makes equitable tolling inappropriate.  *Cf. Cuco v. Federal Medical Center-Lexington*, 2006 WL 1635668, at *26 (E.D. Ky. June 9, 2006) (*citing Miller v. Collins*, 305 F.3d 491, 495-96 (6th Cir. 2002)), *aff'd*, 257 F. App'x 897 (6th Cir. 2007).  Moler's Claim One is therefore barred by the statute of limitations.  Moler's claims regarding the change of medications and any delay in seeing a physician to express his concerns accrued when those events transpired from February 13 to February 20, 2018.  [*See* R. 12 at 4-5.]; *Arena*, 601 F. App'x at 393-94.  Moler was therefore required to file suit within one year, no later than February 20, 2019.  *Hornback v. Lexington-Fayette Urban Co. Gov't.*, 543 F. App'x 499, 501 (6th Cir. 2013).  But he did not sign his complaint and mail it for filing until August 15, 2019, nearly six months later.  His claims are therefore time-barred and must be dismissed.  *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir. 2001).

12

Even if Moler were entitled to some measure of equitable tolling, it would not be enough to render his claims timely filed. The limitations period ran for at least 77 days before he filed an informal grievance on May 8, 2018. While Moler later continued the grievance process, he failed to pursue it diligently because he waited a further 58 days before filing his formal grievance with the warden, well beyond the 20 days permitted by regulation. *See* 28 C.F.R. § 542.14(a). He is therefore entitled to at most 20 days of equitable tolling during this 58-day period. *See Cuco*, 2006 WL 1635668 at *26. Even assuming the limitations period was equitably tolled until the Central Office rejected Moler's last attempted appeal on October 5, 2018, [*see* R. 1-1 at 9], Moler waited an additional 314 days before he signed and mailed his Complaint on August 15, 2019.[2] Thus, the limitations period ran for a minimum of 391 days before Moler filed suit if he is given the full measure of equitable tolling, or 429 days if he is debited for the inordinate delay before the filed a formal grievance with the warden. However counted, both periods plainly exceed the one-year limitations period provided by statute, and Moler's claim is time-barred.

As before, the Court concludes that Moler's numerous and unexplained references to various federal and state statutes and regulations fail to state a viable claim with respect to his allegations in Claim One. Those claims will therefore be dismissed. However, the Court concludes that Moler has, however inartfully, alleged sufficient matter to assert a claim under the FTCA. This is a closer call than it need have been. Moler expressly refers to the FTCA at the very top of his Complaint and includes the United States of America as one of a dozen

---

[2]    Moler's Complaint is deemed filed on that date. *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) ("a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court. ... absent contrary evidence, a prisoner does so on the date he or she signed the complaint.").

defendants listed at the beginning of it.   [R. 12 at 1-2.]  But at the outset of Claim One he lists

the defendants involved, and the United States is not one of them.  *Id*. at 4.  And nowhere does

Moler alleges that the BOP officials mentioned were negligent or failed to meet the applicable

standard of care.  Nonetheless, Moler does reference his effort to exhaust his FTCA claim [*Id*. at

10] and includes both his claim form and the BOP's response to it as attachments [R. 12-1 at 1-

6].  The Court finds this sufficient to direct that the United States be served with process to

respond to Moler's allegations.  For present purposes the Court also assumes (but does not

decide, pending further briefing) that Moler's allegations regarding his erectile dysfunction

qualify as a "physical injury" for purposes of 28 U.S.C. § 1346(b)(2).  Because the Court granted

Moler *pauper* status, the Clerk's Office and the United States Marshals Service ("USMS") will

serve the summons and Complaint on his behalf.  Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d).

### C

Moler also includes a brief "Claim Three" which does not describe new events, but

asserts in conclusory fashion that numerous supervisory officials[3] are liable for the conduct of

their subordinates as described in the first two claims.  This is so, Moler asserts, because by

notifying each of these supervisors of his erectile dysfunction, each of them became "personally

involved" in his medical care and are thus responsible for his alleged injuries.  [R. 12 at 9.]

The claims against all but two of the defendants named in Claim Three have already been

addressed in the discussion above regarding Claims One and Two, and that discussion need not

be repeated here.  Claim Three fails for the same reasons stated above, including the statute of

---

[3]     These include pharmacist Stovall, Dr. Cunnigan, PA Pamela Kenney, BOP Regional
Counsel Mathew Mellady (who denied Moler's FTCA request for settlement), HSA Rhonda Jones,
Asst. HSA Tara Cimarossa, McCreary Warden C. Gomez, and McCreary Executive Asst.
Christopher Mabe.

limitations bar and the failure to make any effort to exhaust this third claim.  In addition, Moler's allegations all come in the form of conclusory assertions, *i.e.*, stating without elucidation that "[e]ach defendant's consistent 'agreement' with lower level staff replies shows the disregard to Moler's safekeeping and proper care."  This is insufficient to allege adequate *facts* showing the supervisory official's personal involvement with medical care provided by others.  *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003); *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981).  This rule applies with extra force where the named supervisor, here Warden Gomez and BOP Counsel Mellady, merely responded to inmate grievances or a FTCA claim.  Cf. *Estate of Young v. Martin*, 70 F. App'x 256, 260-61 (6th Cir. 2003); *Brock v. Wright*, 315 F. 3d 158 (2d Cir. 2003) (absent evidence that warden was medically trained or independently understood allegedly adverse consequences of regional medical director's decision not to refer prisoner for outside treatment, warden was not liable for deliberate indifference to prisoner's medical needs merely for adopting medical director's decision).  Claim Three will therefore be dismissed with prejudice against all defendants.

Accordingly, the Court hereby **ORDERS** as follows:

1.      The claims set forth in Plaintiff Arthur Moler's Complaint [R. 12] against defendants Christopher Stovall; Carrie Cunnigan; Pamela Kenney; J. Free; Rhonda Jones; Tara Cimarossa; Alyssa Handle; Rachel Johnson; Doug Lemon; Ms. Parsons-Gould; Mathew Mellady; Ian Connors; C. Gomez; Christopher Mabe; Jennifer West; Autumn Lawson; Stephanie Sumner; Unknown Named "Contract Medical"; and Unknown Named Designees "Designee" are **DISMISSED WITH PREJUDICE**.

2.      A Deputy Clerk shall prepare two "Service Packets" consisting of the following documents for service of process upon the United States of America:

        a.      a completed summons form;

        b.      the Complaint [R. 12];

        c.      this Order; and

        d.      a completed USM Form 285.

3.      The Deputy Clerk shall send the Service Packet(s) to the USMS in Lexington, Kentucky and note in the docket the date of delivery.

4.      The USMS shall serve the United States of America by sending a Service Packet by certified or registered mail to:

        a.      the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky; and

        b.      the Office of the Attorney General of the United States in Washington, D.C.

This the 14th day of August, 2020.

Gregory F. Van Tatenhove
United States District Judge